2013 WI 18



OFFICE OF THE CLERK

# Supreme Court of Wisconsin

**110 EAST MAIN STREET, SUITE 215**
**P.O. BOX 1688**
**MADISON, WI 53701-1688**

TELEPHONE (608) 266-1880
FACSIMILE (608) 267-0640
Web Site: www.wicourts.gov

February 13, 2013

**To:**

James C. Alexander
Judicial Commission
Suite 700
110 East Main Street
Madison, WI 53703

Franklyn M. Gimbel
Gimbel, Reilly, Guerin & Brown
330 E. Kilbourn Ave., Ste. 1170
Milwaukee, WI 53202

Gregg J. Gunta
Gunta & Reak, S.C.
9898 West Bluemound Road, Suite 2
Wauwatosa, WI 53226

Kevin P. Reak
Gunta & Reak, S.C.
9898 West Bluemound Road, Suite 2
Wauwatosa, WI 53226

You are hereby notified of the following response:

2012AP566-J            Wisconsin Judicial Commission v. David T. Prosser, Jr.

Before Ann Walsh Bradley, J.

The Wisconsin Judicial Commission filed a judicial misconduct complaint against Justice David T. Prosser, concluding that on June 13, 2011, "[b]y his conduct, words and behavior, Justice Prosser willfully violated [three separate provisions of the Wisconsin Judicial Code] and engaged in judicial misconduct pursuant to Wis. Stat. § 757.81 (4) (a)."  It requested that "appropriate discipline be imposed."[1]  In response, Justice Prosser filed motions for recusal of every member of this court.

A motion for recusal in general, and this motion for recusal in particular, can be evaluated only in context.  Justice Prosser's procedural maneuvers, designed to foreclose any opportunity for a public hearing, have deprived this court of a quorum and may deprive the people of this state a full opportunity to learn what happened when four justices simultaneously

---

[1] Wisconsin Judicial Commission v. The Honorable David T. Prosser, Jr., 2010AP566-J, Complaint filed March 16, 2012, at 4.

appeared at my office on the evening of June 13, 2011, demanding that an after-hours press release be immediately issued.

Since the time that law enforcement began its investigation, I have not made any public comments about what happened that evening because I respected the process. Over the past one year and eight months some of my colleagues, however, have appeared on national and state television, and have commented in the national, state, and local press spinning the facts.

The factual inaccuracies and denials of some of my colleagues are not merely things of the past. They continue to this day. It was reported recently that when asked about how the court is operating, Justice Roggensack responded "We are doing just fine" and that "we are working very well together."[2] She contended that any "talk of dysfunction and incivility on the seven-member court [is] 'just a bunch of gossip at its worst.'"[3] It strains credulity that a justice on our court would be perpetuating the myth that our issues of workplace safety and work environment have somehow healed themselves.

Given the recent and continuing factual inaccuracies and denials, and the potential that any future opportunity that I may have to present the facts may be foreclosed by Justice Prosser's procedural maneuvers, I will no longer refrain from comment. Accordingly, I grant a motion for recusal.

**This is and remains for me an issue of workplace safety.[4]**

Contrary to Justice Prosser's answer to the Judicial Commission complaint and to recent public comments, what happened in my office on June 13, 2011 is not an isolated event. Rather, it is one event in a history of abusive behavior in our workplace that has escalated from tantrums and rages, to threats, and now to physical contact. (See Justice Patrick Crooks' statement to Dane County detectives describing the work environment history generally, pages 57-59).[5]

When Justice Prosser's behavior escalated to threats, I sent an email on February 18, 2010, advising the other justices that "a necessary step to address [our] dysfunction is to end these abusive temper tantrums." I also emailed Justice Roggensack individually, explaining that

---

[2] See, e.g., Roggensack: High court getting along, despite contentious reputation, The Milwaukee Journal Sentinel, December 28, 2012; Roggensack recalls high court fight, The [Sun Prairie] Star, February 9, 2013 (available at http://www.hngnews.com/sun_prairie_star/news/government/article_6572c5f2-72f0-11e2-ad63-0019bb30f31a.html (last visited February 12, 2013)).

[3] Wisconsin Supreme Court candidates mix it up during first joint forum, The Milwaukee Journal Sentinel, February 7, 2013.

[4] FBI Law Enforcement Bulletin, Workplace Violence Prevention Readiness and Response, January 2011 (explaining the spectrum of workplace violence and describing the continuum of co-employee violence that includes threats and intimidation giving rise to concerns for personal safety).

[5] Dane County Sheriff's Office Deputy Report for Incident 110176237, August 23, 2011. The report can be found at http://host.madison.com/supreme-court-case-police-reports---police-interviews/pdf_4c314d8a-cff8-11e0-b72d-001cc4c03286.html and the attachments to the report at http://host.madison.com/supreme-court-case-police-reports---internal-court-notes/pdf_7a59badc-cffb-11e0-8b2c-001cc4c03286.html (last visited February 12, 2013).

"[r]egardless of our disagreements, there is no justification for this abusive behavior. Blaming his abusive behavior on others merely enables it."[6] Nothing happened in response.

In February 2010—one year and four months before the now infamous incident in my office—Justice Crooks and I met with the Director of State Courts "asking that something be done about Justice Prosser because . . . there was an escalation in violence."[7] Nothing happened in response.

In late March 2011—two months before the incident in my office—it appeared to me and others that Justice Prosser's behavior was becoming increasingly agitated. One newspaper editorial characterized his comments as "odd," "troubling" and "unsettling."[8] A then, but now retired, Deputy Director of State Courts contacted me to warn of her concern that Justice Prosser may endanger my physical safety as well as that of the Chief Justice.

A plan was devised by law enforcement for enhanced security due to concerns that Justice Prosser's behavior posed a threat to our physical safety. Because the danger came from the inside and not the outside, the locked entry doors that limit public access to the area of the supreme court offices were not a sufficient protection. Both the Chief Justice and I were advised to take steps for personal security, including locking ourselves inside our personal offices when working alone at nights and on weekends.

Additionally, both of us were given as emergency contacts the personal cell, work cell, squad cell, and home phone numbers of Capitol Chief of Police Tubbs as well as the regular Capitol Police office numbers. The Chief Justice was advised to notify Capitol Police when she was coming to the office after hours to work and advised to notify them and, upon request, be accompanied when she left late at night. We were told that law enforcement would patrol the area with greater frequency.

Although this plan was in effect two months before Justice Prosser and the other justices came to my office on the evening of June 13, 2011, it did not prevent him from becoming agitated and grabbing my neck with both of his hands, wrapping them in a full circle around my neck. With the emergency contact numbers at hand, I called the personal cell phone of Chief of Police Tubbs to advise him of the situation but told him that I did not want a report filed. Rather, I wanted to seek a commitment from my colleagues to address this workplace safety issue, internally, as a court.

The next day I sent an email to members of the court, requesting a meeting with the justices, along with Capitol Chief of Police Tubbs, to address "workplace security."[9] Justice Roggensack, who had witnessed the incident the night before, responded as though nothing had happened, inquiring "What is the need for a meeting with Chief Tubbs? Have you had problems with security?"

---

[6] Attachments to Dane County Sheriff's Office Deputy Report for Incident 110176237, August 23, 2011, p. 31.

[7] Dane County Sheriff's Office Deputy Report for Incident 110176237, August 23, 2011, at 58.

[8] Editorial, Green Bay Press Gazette, March 31, 2011.

[9] Attachments to Dane County Sheriff's Office Deputy Report for Incident 110176237, August 23, 2011, p. 37.

All seven justices attended the meeting on Wednesday morning, June 15. I advised the other justices that I was no longer willing to tolerate Justice Prosser's abusive behavior and asked for a commitment that we deal with the issue.[10] As later reported in the Dane County detectives' investigation, Justice Ziegler recognized at that meeting that "We shouldn't be enabling, Justice Prosser needs some counseling."[11] The Chief Justice, Justice Patrick Crooks, and I also recognized it. Justices Roggensack and Gableman were in denial, minimizing the conduct and blaming it on others.

Although Justice Prosser subsequently admitted to the detectives that his hands were "definitely" on my neck, rather than my shoulders, and that "he remembers the warmth on the side of [my] neck in his hands[.],"[12] some of my colleagues continue to minimize Justice Prosser's conduct. Incredibly, they deny what he has already admitted.

Justice Gableman told the detectives that Justice Prosser's hands were "never . . . around her neck at any point." He stated that Justice Prosser had been speaking "meek[ly]" and that "his hands [were] together as if he was praying."[13] Likewise, Justice Roggensack told the detectives "his hands and fingers were pointing straight up and were never around her neck."[14]

In offices and on factory floors throughout this country, the perpetrators of workplace abuse and their enablers often try to minimize the abusive conduct. Then they blame others for it. In a previous incident, Justice Prosser became so enraged at the Chief Justice that he threatened to "destroy" the Chief Justice and called her a "bitch." Justice Roggensack's response was to suggest that sometimes other justices "goad" Justice Prosser into making such threats.[15]

Likewise, (although there has never been a suggestion that I touched him that evening) Justice Roggensack suggests that it was my conduct on the evening of June 13, 2011 that caused Justice Prosser to respond. Instead of leaving my office area, as I was demanding of him, his response was to grab my neck, wrapping both hands around it in a full circle. The Wisconsin Judicial Commission's complaint of judicial misconduct against Justice Prosser, filed after a lengthy investigation, repeats the assertions that ". . . as [Justice Bradley] was directing Justice Prosser to the door" Justice Prosser put his hands "around her neck 'full circle skin-to-skin.'"[16]

In any other place of employment there likely would be serious consequences for such a response. Having a co-worker grab the neck of another in anger is not acceptable behavior in

---

[10] Attachments to Dane County Sheriff's Office Deputy Report for Incident 110176237, August 23, 2011, p. 40.

[11] Dane County Sheriff's Office Deputy Report for Incident 110176237, August 23, 2011, p. 29.

[12] Dane County Sheriff's Office Deputy Report for Incident 110176237, August 23, 2011, p. 41.

[13] Dane County Sheriff's Office Deputy Report for Incident 110176237, August 23, 2011, p. 63.

[14] Dane County Sheriff's Office Deputy Report for Incident 110176237, August 23, 2011, p. 53.

[15] Attachments to Dane County Sheriff's Office Deputy Report for Incident 110176237, August 23, 2011, p. 31.

[16] Wisconsin Judicial Commission v. The Honorable David T. Prosser, Jr., 2010AP566-J, Complaint filed March 16, 2012, at 3.

any work environment, whether it be in a work break room, board room, or the offices of a supreme court justice.

Justice Roggensack's recent and continued denials of the existence of any workplace safety or work environment problems are simply not accurate. It is a myth for her to maintain, as recently reported, that any "talk of dysfunction and incivility on the seven-member court [is] 'just a bunch of gossip at its worst.'"[17] Denying that those problems exist merely enables the behavior and prevents meaningful solutions.

This entire episode has exposed flaws in our court and our system that must be addressed and solved if we are to function properly.

To this day, the Chief Justice and I continue to lock ourselves inside our private offices when working alone because of concerns for our physical safety due to Justice Prosser's behavior. That is not a satisfactory solution. Our court needs to address and solve its workplace safety issue. If nothing is done, I wonder what will happen next in this escalating pattern of abusive behavior.

As an initial step, I urge my colleagues to return to the table and reconsider a proposal that was previously defeated by a majority of the court on a 4-3 vote. On September 28, 2011, Justices Prosser, Roggensack, Ziegler, and Gableman voted against Justice Crook's motion to retain—at no expense to the taxpayers—an expert on conflict resolution who would assist us in addressing and resolving issues that hinder us from best serving the people of this state. Our task is to acknowledge the issues—not deny or minimize them—and to learn from this difficult chapter in our history so that we can build a better court for the future.

Additionally, the process for disciplining justices needs to be reformed. Many court observers have weighed in on the shortcomings of our current system, which puts justices sitting in judgment of their closest colleagues. No one has expressed it better than the editorial writers at the Owens-Withee Enterprise in Withee, Wisconsin. The newspaper captured this flaw in the current system in an April 25, 2012 editorial that concluded as follows: "The current system has created an atmosphere in which there is no accountability for the personal actions of the justices. This is unacceptable and should no longer be tolerated."

I concur. The current system destroys collegiality, compromises accountability, and contributes to the dysfunction of the court.

In the past, our court has been a model for other state supreme courts throughout the country. With a commitment to address these and other issues that hinder us from best serving the people of this state, it can be again.

---

[17] Wisconsin Supreme Court candidates mix it up during first joint forum, The Milwaukee Journal Sentinel, February 7, 2013.

Accordingly, it is hereby ordered: I grant the motion requesting that I recuse myself from a determination of whether to impose discipline pursuant to Wis. Stat. § 757.91 in the case of judicial misconduct brought against Justice Prosser by the Wisconsin Judicial Commission.

---

Diane M. Fremgen
Clerk of Supreme Court